Filed 12/30/13  Modiano v. City of Anaheim CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARTIN MODIANO et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>CITY OF ANAHEIM et al.,<br><br>  Defendants and Respondents. | G048303<br><br>(Super. Ct. No. 30-2012-00601853)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Matthew Pappas and Lee Durst for Plaintiffs and Appellants.

Michael R.W. Houston, City Attorney, and Moses W. Johnson, IV, Assistant City Attorney, for Defendants and Respondents.

Best Best & Krieger and Jeffrey V. Dunn, for City of Riverside as Amicus Curiae on behalf of Defendants and Respondents.

\*          \*          \*

Martin Modiano, Helaine Jones, Kevin Butcher, and Marla James, as disabled patients and members of Patient Med-Aid, a collective organized under the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5; all further undesignated statutory references are to this code) and California's Medical Marijuana Program (MMP; § 11362.7 et seq.), and Patient Med-Aid itself (collectively referred to as "Modiano," under the lead plaintiff's name) appeal from the trial court's decision denying their request for a declaratory judgment that the City of Anaheim's (the city's) ban on medical marijuana dispensaries violates the Disabled Persons Act (DPA; Civ. Code, §§ 54 et seq.). Modiano also argues the city's efforts to aid federal authorities in shutting down the Patient Med-Aid dispensary violated the bar on the illegal use of local government funds (Code Civ. Proc., § 526a), "by spending taxpayer money to call in the federal government" despite state medical marijuana law authorizing dispensaries. These contentions, however, are simply variations on the core preemption claim resolved in *City of Riverside v. Inland Empire Patients Health And Wellness Center, Inc.* (2013) 56 Cal.4th 729 (*Inland Empire*). *Inland Empire* determined state medical marijuana law does not preempt total local bans, and therefore it follows that dispensaries are not a lawful source of medical marijuana for disabled persons if banned under local law. We are bound by that conclusion. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).) We therefore affirm the judgment.

Having noted the relevant background at the outset, we turn immediately to our discussion of Modiano's claims.

# I

## DISCUSSION

Modiano contends the city's ban against dispensaries violates the DPA by discriminating against seriously ill and disabled persons who are protected by the DPA because of medical conditions that "limit a major life activity." (Govt. Code, § 12926.1.) He distinguishes between municipal enactments that discriminate and those ensuring accommodation of the disabled in the sense of "something <u>supplied</u> for convenience or to satisfy a need."

Modiano observes that portions of the DPA require that certain government entities and businesses positively *accommodate* the disabled, but he does not rely on those provisions here. He specifically disclaims any notion local governments must "'accommodate' or take <u>positive</u> action here that is in any way similar to building a wheelchair ramp or widening a door under the different and separate accommodation provisions of the DPA that are <u>not</u> at issue in this case. Here, the patients are not arguing the government must build covered marijuana smoking areas." Similarly, he acknowledges "state and local government entities have no obligation to provide, through accommodation, the *mitigation* relied on by seriously ill or disabled citizens (*i.e.* cultivation equipment, medical cannabis, or dispensaries) or, for example, special chemotherapy rooms for people with cancer."

But Modiano contends "the DPA prohibits *discriminatory* laws that facially or by operation discriminate against such [mitigation] entities that can only provide for [disabled] patients." He likens dispensaries operated at collectives conforming to state medical marijuana law to methadone clinics protected under the Americans with Disabilities Act (ADA) against local "not in my backyard" discrimination.

3

For example, Modiano relies on *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch* (9th Cir. 1999) 179 F.3d 725, where a methadone clinic sued on behalf of its patients to overturn a city ordinance effectively prohibiting methadone treatment centers by means of a 500-foot exclusion zone from residential areas. The Ninth Circuit explained local land-use zoning decisions are not exempt from the ADA's anti-discrimination provisions and found the ordinance facially discriminatory because it subjected methadone clinics, but not other medical clinics, to the spacing limitation. Cautioning that general concerns about crime were insufficient, the court remanded for the trial court to conduct a hearing on whether individuals using the clinic would pose a significant risk to local public health and safety. On remand, the district court found no threat given the clinic's safety procedures and therefore enjoined the ordinance. (*Bay Area Addiction Research and Treatment, Inc. v. City of Antioch* (N.D. Cal. March 16, 2000) [2000 WL 33716782, pp. 11-12].)

Modiano acknowledges a divided panel of the Ninth Circuit has concluded the ADA does not apply to prohibit ordinances banning medical marijuana dispensaries, reasoning the ADA impliedly incorporates the federal Controlled Substances Act's (CSA's) designation of marijuana as an illegal drug serving no acceptable medical need, and therefore the ADA's exclusion for disabled individuals using illegal drugs applied. (*James v. City of Costa Mesa* (9th Cir. 2012) 700 F.3d 394, 403 (*James*).)

The majority in *James* held the ADA's express exception stating "[t]he term 'illegal use of drugs' . . . "does not include the use of a drug taken under supervision by a licensed health care professional" (42 U.S.C. § 12210(d)(1)) did not apply to physician recommendations under state law for the use of medical marijuana because that "would allow a doctor to recommend the use of *any* controlled substance — including

4

cocaine or heroin — and thereby enable the drug user to avoid the ADA's illegal drug exclusion. Congress could not have intended to create such a capacious loophole [to the CSA], especially through such an ambiguous provision." (*James*, *supra*, 700 F.3d at p. 403.) As Modiano notes, however, the Legislature has specified in the CUA and MMP that the use of medical marijuana by qualified patients is not illegal under state law and, on appeal, he relies solely on state law and the DPA, not the ADA, for his discrimination claim. (See Govt. Code, § 12926.1 ["The Legislature finds and declares . . . [¶] . . . The law of this state in the area of disabilities provides protections independent from those in the federal Americans with Disabilities Act of 1990"].)

In particular, Modiano invokes the DPA's "sweeping prohibition of [government] practices that *discriminate* against people with disabilities by" incorporating in Civil Code section 54, subdivision (c), the proscription that "no qualified individual with a disability shall . . . be subjected to discrimination by any such entity." (Cf. 42 U.S.C. § 12132.) Modiano argues the city's ban on medical marijuana dispensaries uniquely targets the disabled because only patients with substantial medical disabilities qualify to obtain marijuana cultivated at a dispensary collective. Indeed, Modiano points out that the qualifiying medical conditions necessary to use medical marijuana are more restrictive than those to qualify for protection under the DPA.

Specifically, the MMP defines a "Serious medical condition" qualifying one to use medical marijuana to include AIDS, anorexia, arthritis, multiple sclerosis muscle spasms, epilepsy seizures, and "other chronic or persistent medical symptom[s] that . . . "*[s]ubstantially* limits the ability of the person to conduct one or more major life activities as defined in the Americans with Disabilities Act of 1990 . . . [or,] [i]f not alleviated, may cause serious harm to the patient's safety or physical or mental health."

5

(§ 11362.7, subd. (h)(1)-(12) & (h)(A), (B).)  The DPA enumerates similar qualifying conditions, including "HIV/AIDS, hepatitis, epilepsy, seizure disorder . . . ," but also expressly provides that "the Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the [DPA] require a 'limitation' upon a major life activity, but do not require, as does the federal Americans with Disabilities Act of 1990, a 'substantial limitation.'  This distinction is intended to result in broader coverage under the law of this state than under that federal act."  (Govt. Code, § 12926.1, subd. (c).)  Given the DPA's broad reach, Modiano complains the city's ban has no effect on individuals who by virtue of their fortunate good health may not lawfully use medical marijuana, but instead discriminates solely and directly against those who meet the definition of a disabled person under the DPA.[1]

The problem with Modiano's argument is that the Supreme Court has determined the medical marijuana activities "authorized by law" under California's medical marijuana program (§ 11362.768, subd. (e)) may be countermanded by local government bans.  The court held in *Inland Empire* that a city ban on medical marijuana dispensaries is not preempted by California medical marijuana law.  The court did not

---

[1]    Amicus curiae City of Riverside argues the CSA preempts state law purporting to legalize marijuana, and therefore there can be no violation of the DPA because dispensaries are not a lawful source of medical marijuana under federal law.  We rejected the notion of federal preemption in *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 735, 761.  We explained the "'unstated predicate'" of the federal preemption thesis is "'that the federal government is entitled to conscript a state's law enforcement officers into enforcing federal enactments, over the objection of that state . . .'" (*ibid.*), or similarly conscript the enactment or interpretation of state law to meet federal objectives.  "The Federal Government," however, "may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program."  (*Printz v. United States* (1997) 521 U.S. 898, 935.)

cite or discuss Civil Code section 3482, which provides: "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." It appears the court implicitly determined Civil Code section 3482 does not apply because "state law does not 'authorize' activities, to the exclusion of local bans, simply by exempting those activities from otherwise applicable state prohibitions." (*Inland Empire*, *supra*, 56 Cal.4th at p. 758.) Justice Liu observed in his concurrence that "[i]f such legislative authorization were clear, then the ordinance in question might well be preempted." (*Id.* at p. 764.) Justice Liu concluded, however, that "[b]ecause state law does not clearly authorize or intend to promote the operation of medical marijuana dispensaries, I agree that the City of Riverside's prohibition on such dispensaries is not preempted." (*Id.* at p. 765.) But neither the concurring justice, nor the opinion of the court addressed the Legislature's amendment to the MMP in 2010 suggesting that in complying with state medical marijuana law "a medical marijuana cooperative, collective, dispensary, operator, establishment, or provider . . . is *authorized by law* to possess, cultivate, or distribute medical marijuana . . . ." (§ 11362.768, subd. (e), italics added.)[2]

The practical effect of *Inland Empire* is that a medical marijuana cooperative, collective, dispensary, operator, establishment or provider authorized under state medical marijuana law to conduct its activities is *not* "authorized by law to possess, cultivate, or distribute medical marijuana" (§ 11362.768, subd. (e)) unless also authorized

---

[2]     Specifically, the terms of section 11362.768, subdivision (e), provide that the Legislature's enactment in 2010 requiring a 600-foot radius between schools and dispensaries with a storefront or mobile retail outlet "shall apply only to a medical marijuana cooperative, collective, dispensary, operator, establishment, or provider that is authorized by law to possess, cultivate, or distribute medical marijuana and that has a storefront or mobile retail outlet which ordinarily requires a local business license." The Legislature therefore contemplated that some dispensaries are "authorized by law."

7

by local law to do so.  Under this rationale, a local government also may ban qualified individuals from cultivating and using medical marijuana at home, given the primacy of local land-use decisionmaking in *Inland Empire*.  By the same reasoning, a disabled person may not look to a dispensary as a source of lawful medical marijuana because its medical marijuana activities are not "authorized by law" until they are ratified by local law.  In other words, state medical marijuana law not only incorporates local dispensary regulations and restrictions (§ 11362.768, subd. (e)), but also outright bans.  Modiano complains this interpretation of state medical marijuana law effectively grants local authorities a license to discriminate against disabled persons by foreclosing a lawful source of medical marijuana to treat their conditions.  But under *Inland Empire*, a source is not lawful unless endorsed by local officials.

This vitiates Modiano's related claim that the city violated Code of Civil Procedure section 526a in turning to federal authorities to help shut down the dispensary.  That section creates "[a]n action to obtain a judgment, restraining and preventing *any illegal expenditure* of . . . a county, town, city or city and county of the state . . . ." (Italics added.)  Modiano asserts city cooperation in any manner with federal authorities to shut down dispensaries constituted an illegal use of local assets, thereby contravening state policy promoting the availability of medical marijuana for disabled persons and other seriously ill Californians.  But because state medical marijuana law incorporates under *Inland Empire* local marijuana regulations and restrictions, including bans, the city's actions were not illegal under state law, nor under city or federal law deeming medical marijuana illegal.  *Inland Empire* is controlling law.  (*Auto Equity*, *supra*, 57 Cal.2d at p. 455.)

8

III

DISPOSITION

The judgment is affirmed.[3]  The parties shall bear their own costs on appeal.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.

---

[3]     We deny as irrelevant Modiano's requests for judicial notice of:  (1) a revised U.S. Department of Justice memorandum and other documents suggesting a more lenient *federal* approach to dispensaries that are not engaged in drug trafficking but instead serve the medical needs of their patients; (2) Assembly Bill 2279 (2009), passed by the Legislature to overturn the Supreme Court's conclusion in *Ross v. Ragingwire Telecommunications* (2008) 42 Cal.4th 920 [no FEHA violation in terminating employee for marijuana use], but vetoed by the Governor; (3) patents issued by the Uniteds States Patent & Trademark Office based on the antioxidant properties of cannibinoids, to undermine the CSA's conclusion marijuana has no medical uses.  The documents do nothing to affect the conclusion in *Inland Empire* that state law does not preempt local bans on dispensaries, and therefore dispensaries are not a lawful source of marijuana for disabled persons.

9